IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Samuel Laurence C.,**

       **Plaintiff,**

      **v.**                                      **CIV No. 1:23-CV-01064-KRS**

**CAROLYN COLVIN,[1]**
**Acting Commissioner of Social Security,**

       **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff Samuel Laurence C.'s ("Plaintiff") Motion to Reverse and Remand for Rehearing ("Motion") (Doc. 18), dated July 26, 2024, challenging the determination of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") that Plaintiff is not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. The Commissioner responded to Plaintiff's Motion on August 30, 2024, (Doc. 22), and Plaintiff filed a reply on September 13, 2024, (Doc. 23).[2] With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has meticulously reviewed the administrative record. Having done so, the Court concludes that the Administrative Law Judge ("ALJ") did not err in his decision and will therefore **DENY** Plaintiff's Motion and **AFFIRM** the judgment of the Commissioner.

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff did not file a Notice of Completion per D.N.M.LR-Civ.7.4(e). The Court, *sua sponte*, finds the Motion is ripe as the last filing in relation to the Motion was September 13, 2024, and Plaintiff has not requested leave of the Court to file a surreply.

## I.    PROCEDURAL POSTURE

On June 9, 2020, Plaintiff filed an initial application for DIB with an alleged onset date of October 11, 2019, at 51 years of age. (*See* Administrative Record ("AR") at 66; 251–52).[3] Plaintiff alleged he was disabled due to a "seizures, hypertension, lung problems, back and left knee problems, a major depressive disorder, and a generalized anxiety." (*Id.* 67). Plaintiff's date last insured, the date through which he could be eligible to receive disability insurance benefits, is December 31, 2025. (*Id.* at 20).

Plaintiff's application was denied at the initial level on September 24, 2020 (*id.* at 109–13), and upon reconsideration on April 13, 2022 (*id.* at 115–16). Plaintiff requested a hearing on May 4, 2022, (*id.* at 117–18), which ALJ Michael S. Hertzig ("ALJ Hertzig" or the "ALJ") conducted on December 13, 2022, (*id.* at 17; *see also* (Doc. 18) at 1). Plaintiff was represented by Andrew Scott Youngman ("Youngman") and Michael Stephen Stretton, two non-attorney representatives. (AR at 17; 1163–65). Plaintiff testified at the hearing (*id.* at 17, 1163–83), as did vocational expert Lilia Rascon (*id.* at 1177, 1183–95). On April 18, 2023, the ALJ held a supplemental telephonic hearing. (*Id.* at 17, 43–65). Plaintiff appeared and was represented by Youngman as well as legal counsel. (*Id.* at 17, 43–45). Michael Stinson, a vocational expert, testified at the supplemental hearing. (*Id.* at 17, 43–44, 47–64). On May 23, 2023, the ALJ issued an unfavorable decision. (AR at 14–42). On October 3, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* 1–3).

---

[3] Document 15 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page. Notably, Plaintiff's Application Summary for DIB is dated June 17, 2020. (AR at 251). However, Plaintiff's Disability Determination and Transmittal states Plaintiff completed her application for DIB on June 9, 2020. (*Id.* at 66). The Court utilizes June 9, 2020, as the respective date for purposes of this Memorandum, Opinion, and Order.

On November 30, 2023, Plaintiff appealed to the United States District Court for the District of New Mexico. *See* (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the

evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

   **B.    Disability Framework**

   "Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

   At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

/ / /

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE ALJ'S DETERMINATION

On May 23, 2022, ALJ Hertzig issued a decision denying Plaintiff's application for DIB. (AR at 14–42). In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. (*Id.* at 20–93). First, ALJ Hertzig found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since his alleged onset date of October 11, 2019. (*Id.* at 20). The ALJ then found at step two that Plaintiff suffered

from the following severe impairments: "epilepsy and substance abuse (alcohol)." (*Id.*). Plaintiff also claimed, "alleged disability due to generalized anxiety disorder, major depressive disorder, hypertension, and an 'unknown back, [left] knee problem,' and 'lungs problem.'" (*Id.* at 20 (citing AR at 285–92)). ALJ Hertzig found the foregoing conditions to be non-severe because the longitudinal medical record showed "little history of treatment or ongoing medical management." (*Id.* at 24). Thus, whether considered separately or in a combination with other impairments, the impairments were not severe. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 20–25).

The ALJ next determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid all exposure to moving machinery and to unprotected heights." (*Id.* at 25–26). In determining Plaintiff's RFC, the ALJ extensively reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*Id.* at 20–32). Plaintiff testified he had "chronic pain . . . in various places" in his body. (*Id.* at 20 (*referencing* AR at 1172)). He further testified that he had "no range of motion in his feet, ankles, left arm and hand." (*Id.*) Plaintiff, however, claimed he scheduled a surgery to "move the nerves around" in his left arm in January 2023. (*Id.*) Plaintiff also testified that the chronic pain interfered with his ability to walk and stand. (*Id.* at 20 (*referencing* AR at 1173)). Indeed, Plaintiff stated he could only stand in one place for "maybe 20 minutes." (*Id.*) He further testified that he began using a walker in August 2021, and after 20-minutes of standing, the walker was necessary for him to move. (*Id.* at 20 (*referencing* AR at 1173–74)). As such, he utilized his walker both inside and outside the home. (*Id.* (*referencing* AR at

47)). Plaintiff also testified to shortness of breath and needing to lie down after climbing two-stories of stairs. (*Id.* (*referencing* AR at 1173)). With respect to daily chores, he claimed his roommate did the laundry, cleaning, cooking, and shopping. (*Id.* (*referencing* AR at 1174)). Plaintiff also reported that he could lift and carry 20 pounds with his right arm, but he was unable to grip with his left hand. (*Id.* (*referencing* AR at 1175)). He also testified that he had issues interacting with peers due to purported conditions, however, he got along with people. (*Id.* (*referencing* AR at 1175–76)). In assessing the evidence of record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (*Id.* at 28). He held, however, that Plaintiff's statements about the "intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*)

The medical record showed Plaintiff reported "chronic pain," including "back pain," at various times to medical providers. Despite these reports, Plaintiff's examinations and treatment history generally painted a different picture. Specifically, ALJ Hertzig made the following findings:

- Plaintiff alleged an onset disability date of October 11, 2019, but the medical evidence was "devoid of any complaints, treatment, or visits for an impairment until January 23, 2020, when he was treated for a fall that was believed related to alcohol withdrawal." (AR at 28 (*citing* AR at 361)).

- On January 23, 2020, Plaintiff was admitted to the emergency room after sustaining a fall. (*Id.* at 20 (*citing* AR 340–90)). Medical providers were concerned about an "upper GI bleed and alcohol withdrawal." (*Id.* (*citing* AR at 361)). Plaintiff reported he drank 20 beers the day of his emergency room admission, "which was not

unusual for him . . . ." (*Id.*) He further reported that he had been "drinking heavily for 2 years." (*Id.*) Plaintiff's CT scan of his brain and cervical spine were negative. (*Id.* (*citing* AR at 383)). His psychiatric exam reported normal findings. (*Id.* (*citing* AR at 355)).

- In August 2021, Plaintiff made "significant progress toward his [physical therapy] goals." (*Id.* at 21 (*citing* AR at 793)). He increased his ambulation distance and was able to perform all functional mobility tasks with reduced assistance. (*Id.*) Yet, he continued to have impairment with dynamic and static balance, especially when performing turns and transitioning from sitting to standing. (*Id.*)

- Also in August 2021, a cervical spine MRI demonstrated the following findings: "C5-6 discitis-osteomyelitis with prevertebral phlegmon and tiny abscess at that level; moderate thecal sac compression at that level, primarily related to disc osteophyte complex/degenerative change, and no intramedullary spinal cord signal abnormality." (*Id.* at 21 (*citing* AR at 851–52)). A thoracic and lumbar spine MRI showed "no intramedullary spinal cord signal abnormality, mild bilateral neural foraminal stenosis at L1-2, mild right, moderate left neural foraminal stenosis at L2-3, moderate bilateral neural foraminal stenosis at L3-4 and L4-5, and severe bilateral neural foraminal stenosis at L5-S1." (*Id.* (*citing* AR at 849–50)).

- On September 1, 2021, at Plaintiff's Outpatient Parenteral Antibiotic Therapy appointment, Plaintiff reported "no back tenderness," "no pain with lower back movements," "normal range of motion on the extremities," and "no obvious [musculoskeletal] deformities." (*Id.* (*citing* AR at 813–14)).

- On September 15, 2021, Plaintiff reported to Umesh S. Metkar, M.D. that he did

not have any neck pain, he presented with full range of motion of the cervical spine, and, although the physical exam demonstrated "5/5 strength in bilateral deltoids, biceps, triceps, right-sided wrist flexors and extensors, and interaction lumbricals," he experienced some weakness on his left side. Plaintiff also presented with "normal gait and alignment" and "full strength in the bilateral lower extremities." (*Id.* (*citing* AR at 806).

- On October 6, 2021, Plaintiff reported to Isaac Zoller, M.D., for a chronic pain appointment. (*Id.* (*citing* AR at 1082–89)). Plaintiff reported "feeling well" after a three month hospital stay for alcohol withdrawal in the ICU. (*Id.* (*citing* AR at 1082)). Yet, Plaintiff stated "back and neck now painful all the time. Would like to try cannabis for this." (*Id.*) Plaintiff was diagnosed with "chronic pain" and prescribed "gabapentin 1-3x/day." (*Id.* (*citing* AR at 1084)).

- On February 5, 2022, Plaintiff presented to Christus St. Vincent Emergency Department with complaints of a laceration to the face and left elbow pain after a slip and fall on ice. (*Id.* (*citing* AR at 1070–81)). Plaintiff smelled of alcohol. (*Id.* (*citing* AR at 1072)). He also had normal range of motion with no rigidity or tenderness in the cervical back. (*Id.* (*citing* AR at 1073)).

- On March 9, 2022, Elizabeth Richardson, M.D., performed a psychological consultative examination. (*Id.* (*citing* AR at 976–81)). Plaintiff described his "social functioning as fair," he stated he "occasionally" drank alcohol and denied "previous alcohol treatment history." (*Id.* (*citing* AR at 976–77)). He reported he was able to complete the following daily activities without assistance: eating, toileting, transferring, continence, communication, transportation, shopping,

managing medicine and finances. (*Id.* (*citing* AR at 978)). He required partial assistance for the following daily activities: bathing, dressing, meal preparation, and housework. (*Id.* at 21–22 (*citing* AR at 978)). Plaintiff was ambulating with the assistance of a walker. (*Id.* at 22 (*citing* AR at 979)).

- On March 16, 2022, Victor R. Salgado, M.D. ("Dr. Salgado"), performed a consultative examination on Plaintiff. (*Id.* (*citing* AR at 982–81)). Plaintiff presented with a "slight antalgic gait with the use of a walker," but was not in acute distress. (*Id.* (*citing* AR at 984)). Plaintiff did not have difficulty grasping the handle of the walker. (*Id.* (*citing* AR at 986)). He was able to lift, carry, and handle light objects. (*Id.*) Plaintiff was also able to squat and rise from a squat with difficulty. (*Id.*) Plaintiff could rise from a sitting position without assistance. (*Id.*) Plaintiff performed his gait test without the walker. (*Id.*) Plaintiff was able to walk on his heels and toes, hop on one foot with difficulty, and perform tandem walk with some balance difficulty. (*Id.*) Dr. Salgado noted Plaintiff did not give his best effort during the exam. (*Id.* (*citing* AR at 988). He concluded, Plaintiff had "no significant physical abnormalities or limitations noted on examination in relation to" back or left knee pain. (*Id.* (*citing* AR at 987–88)).

Based on the foregoing, ALJ Hertzig concluded Plaintiff's allegations regarding his "physical limitations from chronic body pain, including an inability to stand for more than 20 minutes at one time or walk without use of a walker, inconsistent with the medical evidence." (AR at 23.) The ALJ noted Plaintiff's allegations were contradicted by the medical evidence that demonstrated Plaintiff presented with a normal gait and full strength in his lower extremities in 2021 and 2022. (*Id.* (*citing* AR at 806)). And, although Plaintiff presented with some balance

difficulties, he generally had no difficulty performing the tasks during his psychological and internal medicine consultative examinations. (*Id.* (citing AR at 976–90)). Dr. Salgado also concluded that Plaintiff did not require a walker. (*Id.*)

ALJ Hertzig further found that the overwhelming medical evidence did not support Plaintiff's allegations of "dyspnea/shortness of breath, weakness, or loss of function in the left arm and hand." (*Id.* at 23) The ALJ recognized Plaintiff had MRI scans showing degenerative changes in the cervical and lumber spine. (*Id.* (citing AR at 814, 849–52, 982–90)). The record, nevertheless, was absent of any treatment or evaluation of the alleged back pain and impairment other than his report of chronic pain on October 6, 2021. (*Id.* (citing AR at 1082–84)). Moreover, in August 2021 and March 2022, Plaintiff reported no tenderness or lower back pain and he had full range of motion in the back. (*Id.* (citing AR at 814, 849–52, 982–90)). ALJ Hertzig found the same followed for Plaintiff's hand/arm pain. (*Id.*) Plaintiff presented with weakness in limited testing, but the evidence lacked a "history of treatment, deficits on exam, and other dysfunction." (*Id.* (citing various medical records)). Plaintiff's medical records also failed to show neurologic deficits, dyspnea, or evidence supporting a "shortness of breath." (*Id.* (citing AR at 1073, 1084, 675–76, 814, 982–90)).[4]

In addition to the above-referenced medical history, ALJ Hertzig detailed Plaintiff's medical history from approximately June 23, 2020, to November 2, 2022. (AR at 20–25). During this timeframe Plaintiff met with an estimated 15 treating and non-treating medical providers for his purported physical and mental conditions. (*Id.*) After a second review of these medical records, Plaintiff's "little history of treatment or ongoing medical management" of his alleged "chronic

---

[4] The Court notes that pages 1132 to 1149 of the Administrative Record are partially corrupted and thus, unavailable for the Court's review. The Court, however, finds that there is substantial evidence within the Administrative Record to support the ALJ's determination as stated *infra* despite these corrupted pages.(*See* Doc. 15 at 1138–55).

impairments" was inconsistent with the purported severity of Plaintiff's functional limitations and, thus, diminished the persuasiveness of Plaintiff's allegations. (*Id.* at 24). Accordingly, ALJ Hertzig found the chronic impairments to be not severe and cause no "more than a minimal limitation of physical ability to do basic work activities." (*Id.*)

ALJ Hertzig also determined Plaintiff's daily activities were inconsistent with debilitating limitations that would preclude past work based on the RFC. (*Id.* at 28–29.) Plaintiff reported he only needed partial assistance with meal preparation, housework, bathing, and dressing. (*Id.* (citing AR at 976–81)). Plaintiff also misrepresented his use of substance abuse (alcohol) based on his inconsistent testimony and the objective medical evidence, including his statements to medical providers. (*Id.* at 26–27.) The longitudinal medical evidence, as previously noted, showed Plaintiff's medical exams were generally unremarkable. (*Id.* at 27–28.) For those reasons, ALJ Hertzig found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with medical evidence. (*Id.* at 28–29.)

Next, ALJ Hertzig evaluated medical source statements for their persuasiveness. He found consultative examiner, Dr. Salgado's, opinion persuasive as to Plaintiff's non-severe impairments. (AR at 29.) Dr. Salgado opined Plaintiff had no significant physical abnormalities or limitations with respect to his supposed back pain, left knee problem, lung problem, or hypertension. (*Id.* (citing AR at 982–90)). Dr. Salgado further opined that even though Plaintiff did not present his best effort during the exam, Plaintiff generally exhibited grossly normal motor, sensory, and range of motion findings. (*Id.*) ALJ Hertzig further noted that Dr. Salgado's findings were consistent with the totality of the medical evidence except for Plaintiff's extended admission due to alcohol withdrawal and seizure-like activity. (*Id.* (citing various medical records)). The ALJ also found persuasive the opinion of State agency medical consultant at the reconsideration level, Ben

Johnson, M.D. ("Dr. Johnson"). Similar to Dr. Salgado, Dr. Johnson determined that there was no objective evidence for the need of a walker. (AR at 30 (citing AR at 76–100)). Plaintiff also failed to put forth his best effort in relation to his left hand function and ambulation. (*Id.*)

On the other hand, ALJ Hertzig found the opinion of Kevin McGeorge, D.O. ("Dr. McGeorge"), unpersuasive. Dr. McGeorge completed a "Medical Opinion-Physical Conditions" form in January 2023. (AR at 30 (citing AR 1109–17)). In the form, Dr. McGeorge opined Plaintiff would be "off-task" 20% of the workday, be absent four days per month, and would have limited ability in lifting and carrying greater than 100 pounds, as well as sitting, standing, and walking over an eight hour workday. (*Id.*) Dr. McGeorge further opined Plaintiff would need to rest at least once for 30-minutes in an eight-hour period. (*Id.*) In support of his opinion, Dr. McGeorge cited "MRI findings." (*Id.*) ALJ Hertzig found Dr. McGeorge's opinion unpersuasive on the basis that he merely cited Plaintiff's diagnosis and "MRI findings." (*Id.*) Dr. McGeorge did not provide a summary of his examination findings nor an explanation supporting the limitations. (*Id.*) ALJ Hertzig further noted that Dr. McGeorge's opinion was inconsistent with the medical evidence overall. (*Id.* at 30–31.) Likewise, ALJ Hertzig concluded Plaintiff's family physician's opinion was not only inconsistent with the longitudinal medical record, but lacked any subjective or objective medical evidence. (*Id.* at 31.) Accordingly, ALJ Hertzig determined Plaintiff could work within the limitations in the RFC.

At step four, the ALJ found Plaintiff's past work as a sales manager was not precluded by his RFC. (*Id.* at 32–34). Hence, the ALJ was not required to proceed to step five. *See Thomas*, 540 U.S. at 24–25. ALJ Hertzig thus concluded Plaintiff was not disabled at any time from October 11, 2019, through the date of the ALJ's decision. (AR at 34.)

## IV.     DISCUSSION[5]

Plaintiff argues that the ALJ erred in concluding that his "chronic pain, especially his lower back pain" was a non-severe impairment at step two. (Doc. 18 at 6–9). Plaintiff also asserts that the ALJ failed to adequately consider his symptoms related to his chronic pain/lower back pain in formulating his RFC. (*Id.* at 9–11). Plaintiff also intimates that ALJ Hertzig failed to properly assess Plaintiff's subjective statements to support his RFC. (*Id.* at 9–10). Defendant disputes each of these arguments. *See generally* (Doc. 22). For the reasons explained below, the Court agrees with Defendant.

### A.     The ALJ Did Not Commit Reversible Error at Step Two

In his opening papers, Plaintiff argues that the ALJ erred at step two in concluding his "chronic pain, especially his lower back pain" was not a severe impairment. (Doc. 18 at 6–9). Plaintiff also claims that ALJ Hertzig did not cite any specific evidence that contradicted Plaintiff's subjective claims and failed to recognize objective medical evidence supporting a severe impairment for "back pain." (*Id.* at 6–7.) In his reply, Plaintiff asserts the case should be remanded because the ALJ did not explicitly address "Plaintiff's 'multiple levels of neural foraminal stenosis' in his lumber spine" in his step two findings. (Doc. 23 at 2).

Here, ALJ exhaustively discussed Plaintiff's subjective statements, hospitalizations, medical visits, and medical examinations as they related to Plaintiff's "chronic pain," "back pain," and other alleged impairments at step two. (*See* AR at 20–22). The ALJ noted that despite the

---

[5] Plaintiff's Motion does not object to the ALJ's findings as to the persuasiveness of the medical opinions, the ALJ's assessment at step two in relation to any purported impairment other than "chronic pain" and "back pain," as well as any findings regarding Plaintiff's physical and mental limitations in the RFC analysis other than "chronic pain" and "back pain." *See* (Doc. 18). Hence, Plaintiff does not challenge the ALJ's conclusions other than those applicable to his "chronic pain" and "back pain" at step two and step four and, thus, has waived his right to appeal the ALJ's decision as to those conclusions. *See Anderson v. United States DOL*, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005). Further, in the Motion, Plaintiff initially objects to the ALJ's assessment of his "chronic pain" and "back pain." In his arguments, he focuses primarily on his "back pain." *See generally* (Doc. 18). For purposes of this Memorandum, Opinion, and Order, the Court only addresses Plaintiff's contentions as to his alleged chronic and back impairments.

imaging studies that showed degenerative changes in Plaintiff's cervical and lumbar spine the record was still void of treatments and evaluations of his back pain except for his October 2021, medical visit for chronic pain. (*Id.* at 23). Further, despite Plaintiff's subjective statements and the singular MRI imaging, the objective longitudinal medical evidence disputed Plaintiff's allegations. (*Id.* at 21, 23–24; *see also* AR at 27, 29–31.). The Court agrees that the ALJ did not explicitly state "Plaintiff's 'multiple levels of neural foraminal stenosis' in his lumber spine" were non-severe impairments. However, a careful reading of the ALJ's decision demonstrates the ALJ considered Plaintiff's "chronic pain," "back pain," and other alleged impairments to be non-severe. (*See id.* at 21, 23–24; *see also* AR at 27, 29–31.). Although the ALJ could have made a clearer finding at step two as it pertained to Plaintiff's chronic pain and back pain, the error is not reversible. "As long as the ALJ finds one severe impairment, [he] may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman*, 813 F.3d at 1330. Here, the ALJ found two severe impairments at step two and proceeded through the sequential evaluation process. Hence, the Court does not find reversible error at step two.

### B.    Plaintiff Fails to Show Any Error in Assessing the RFC

Plaintiff argues that the ALJ completely failed to address his chronic pain and back pain when making his RFC determination. (Doc. 18 at 7–11). Further, the evidence supports a finding that, at a minimum, the impairments would preclude substantial gainful employment, including Plaintiff's past work, medium work, and sedentary work. (*Id.* at 10–11). Plaintiff directs the Court to the following evidence: (1) Plaintiff's testimony pertaining to his pain and limited daily activities; (2) imaging that showed "multiple levels of neural foraminal stenosis" in his lumbar spine; (3) Dr. Salgado's observations that Plaintiff had "slight antalgic gait," "stance phase of gait

is slightly shortened relative to the swing phase," Plaintiff had some difficulty with balance on tandem walk without a walker; (4) Dr. Jo's comment that he had multiple medical conductions that require a walker; and (5) Dr. McGeorge opined to multiple physical limitations and need of an assistance device. (*Id.* at 7–9). The Court is not persuaded.

The ALJ specifically stated that he "considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are non-severe (20 CFR 404.1545)." (AR at 24). Indeed, the ALJ discussed and made findings on Plaintiff's chronic pain and back pain throughout his decision. *See* AR 20 (noting Plaintiff testified to chronic pain that limited his daily activities and required a walker), 21 (noting imaging scans of deterioration, but physical exams with no back pain or tenderness, full range of motion, and 5/5 strength, normal gait and alignment, walking daily, no assistance with a handful of daily activities), 22 (slightly antalgic gait with shortened stance with use of a walker, no evidence for balance deficits, good muscle strength, no difficulty grasping, lifting, carrying, and handling light objects, difficulty with rising from a squat, and no difficulty from rising from a sitting position, diagnosis of back pain), 23–24 (noting objective medical evidence and lack of treatment disputed Plaintiff's subjective statements of back pain impairments), 26 (Plaintiff reported he was running and his CT scan was negative), 27–28 (noting physical exam grossly unremarkable, normal movement of all extremities, slightly antalgic gait, no evidence of balance deficits, Plaintiff did not give best effort during exam, Plaintiff reported he was running in March 2020, no treatment for any impairment until January 2020), 29–30 (Plaintiff reported feeling well, normal movement on physical exam, some limitations found, but generally within normal limits).

Moreover, in connection with the RFC analysis, the ALJ stated, that Dr. Salgado opined that Plaintiff had "no significant physical abnormalities or limitations . . . in relation to his alleged

back problem, left knee problem, lung problem, epilepsy, or hypertension" and Plaintiff "did not require an assistive device for ambulation." (AR at 29). The ALJ also cited to Dr. Johnson's opinion that there was "no objective evidence that a walker is necessary for ambulation" and Plaintiff did not exert best effort in relation to the ambulation and left hand function exams. (*Id.* at 30). The ALJ further found Dr. McGeorge's opinion that limited Plaintiff "to frequent postural activities" due to his lumbar stenosis unpersuasive. (*Id.*) The ALJ noted that Dr. McGeorge failed to offer substantial supporting evidence for the limitation. (*Id.*) Rather, Dr. McGeorge merely cited Plaintiff's diagnosis and "MRI findings."[6] (*Id.*)

Consistent with the Tenth Circuit's directive, this court takes the ALJ at his word. *See, e.g., Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter"); *Wall v. Astrue*, 561 F.3d at 1070 ("Where the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (cleaned up) (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). The ALJ's explicit mention of Plaintiff's "chronic pain" and "back problem" and assisted ambulation, coupled with his affirmative representation that he considered all of Plaintiff's impairments, give this Court no reason to doubt that the ALJ considered Plaintiff's chronic pain and back pain in determining Plaintiff's RFC—even if he did not expound upon those particular impairments at length under step four. *See Clifton*, 79 F.3d at 1009–10 ("The record must

---

[6] Plaintiff does not contest the ALJ's findings as to the persuasiveness of Dr. McGeorge's opinion. As such, Plaintiff has waived his right to appeal the ALJ's conclusion. *Anderson*, 422 F.3d 1155 at 1174, 1182 n.51. Notwithstanding, the Court notes that Plaintiff's reliance upon the mere diagnosis of chronic pain or back pain is misplaced because it is the resultant functional limitations arising from such a condition, if any, that must be used by the Commissioner to formulate Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can do despite your limitations."); § 416.945(a) (same). "Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (*citing Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (diagnosis of major depression does not automatically establish disability); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (no medical evidence corroborated claimant's testimony that she was unable to work).

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Regardless, the ALJ's analysis of Plaintiff's chronic pain and back pain impairments at step two, *see* AR 20–24, allows the Court to follow the reasoning underlying the ALJ's determination of the RFC. As the Tenth Circuit has emphasized, an ALJ's previous discussion of an impairment is sufficient for this purpose, particularly where, as here, the ALJ states that he took into account "all" of Plaintiff's "medically determinable impairments" in determining Plaintiff's RFC. *See* AR at 24, 28; *see also, e.g.*, *Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (where "the ALJ said he took into account "the entire record" and "all symptoms" in determining an RFC, "[i]t is clear this included Bradley's hand impairments because the ALJ discussed them in detail earlier in the decision"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("[M]erely technical omissions in the ALJ's reasoning do not dictate reversal.").

In the end, the court must be able to (1) determine that the ALJ applied the correct legal standard, (2) follow the ALJ's reasoning, and (3) find that there is substantial evidence to support the conclusion reached by the ALJ. In the case at bar, the ALJ applied the correct legal standard. His analysis at step two allows the Court to follow his reasoning and to understand the basis for his conclusion that Plaintiff's chronic pain and back pain did not justify a lower RFC. And, the ALJ's citation to evidence in the record at step two and step four satisfy the Court that there is substantial evidence to sustain the ALJ's RFC determination. The Court thus finds no reversible error.

## C.    The ALJ Did Not Improperly Evaluate Plaintiff's Subjective Statements

In his final argument, Plaintiff summarily contends that the ALJ improperly discredited his subjective complaints of chronic pain and back pain symptoms. (Doc. 18 at 9–10). The

Commissioner describes Plaintiff's argument as "undeveloped" and should be deemed waived. (Doc. 22 at 18–19). The Commissioner further argues that the Court should give the ALJ deference in his credibility findings of Plaintiff's subjective complaints. (*Id.* at 19). The Court agrees and finds that the ALJ followed the proper procedure and made determinations that were supported by substantial evidence. *See Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."); *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) ("A party forfeits an issue it does not support with legal authority or argument." (citation and quotation omitted)).

The Court will not disturb an ALJ's evaluation of a claimant's symptoms, if they are supported by substantial evidence, because such "determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008). In making such a determination, the ALJ may consider numerous factors, including objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; medication used for relief of pain or other symptoms; and other measures used to relieve pain. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 (eff. March 28, 2016), at *4, *7–8; *Wilson v. Astrue*, 602 F.3d 1136, 1144–45 (10th Cir. 2010). The ALJ need not conduct "a formalistic factor-by-factor recitation of the evidence . . . [s]o long as [he] sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In evaluating Plaintiff's allegations of disabling symptoms at step one, the ALJ found that Plaintiff has medically determinable impairments that could reasonably be expected to cause some of Plaintiff's physical limitations alleged. (AR at 20–27). The ALJ then evaluated the record to

determine the extent of limitations caused by Plaintiff's symptoms and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 28).

In making this determination, the ALJ first considered Plaintiff's testimony regarding his limitations as well as his activities of daily living. (AR at 20–22). The ALJ found Plaintiff's subjective statements were inconsistent with the substantial objective medical evidence. (*Id.* at 26–31). For example, Plaintiff testified that he "never had any alcohol issues whatsoever" and had not been hospitalized because of alcohol use. (*Id.* at 26). The longitudinal medical evidence, nevertheless, showed Plaintiff was hospitalized and treated multiple times for excessive alcohol use. (*Id.* at 26–31). Plaintiff also testified that he was "running," when he was purportedly disabled and needed to use a handrails when using stairs. (*Id.* at 26). Plaintiff's objective medical evidence further demonstrated "grossly unremarkable" physical exams, Plaintiff failed to give his best effort during exams, and his own statements to providers contradicted his allegations. *Id.* at 27–28. Plaintiff's contention that the ALJ failed to consider or improperly construed Plaintiff's subjective complaints is thereby unpersuasive. And, to the extent Plaintiff invites the Court to reweigh the evidence underlying the ALJ's finding, it is not the Court's role to do so. *See Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).

## V.    CONCLUSION

Plaintiff fails to show that remand is warranted either for the ALJ's evaluation of his chronic pain or back pain at step two, *see* (Doc. 18 at 6–9), or for the ALJ's determination of the Plaintiff's RFC, *see id.* at 9–11. Similarly, Plaintiff fails to show any reversible error in the ALJ's findings on Plaintiff's subjective complaints. *See id.* at 9–10.

/ / /

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, (Doc. 18), is **DENIED**. The Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED**.


_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**